USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/7/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
                          :

LLEWELLYN ANGELO WILLIAMS,
                          :

           Plaintiff,          :       13-CV-3315 (NSR)

    -against-              :

                          :       OPINION AND ORDER

THE CITY OF NEW ROCHELLE, THE CITY  :
OF NEW ROCHELLE POLICE DEPARTMENT,  :
SERGEANT DANIEL CONCA, SERGEANT  :
JOHN INZEO, SERGEANT KYLE WILSON,  :
POLICE OFFICER ADAM CASTIGLIA, POLICE :
OFFICER EDWARD SILLER,         :

                          :

          Defendants.       :
----------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Llewellyn Angelo Williams ("Plaintiff") commenced this action against the City

of New Rochelle, City of New Rochelle Police Department,[1] Sergeant Daniel Conca, Sergeant

John Inzeo, Sergeant Kyle Wilson, Police Officer Adam Castiglia, and Police Officer Edward

Siller (collectively "Defendants"), asserting federal claims under the Fourteenth Amendment to

the United States Constitution pursuant to 42 U.S.C. §§ 1981 and 1983. (Sixth Amended

Complaint at ¶ 1, ("Complaint").) Before this Court is Defendants' Motion for Summary

Judgment. For the following reasons, Defendants' Motion for Summary Judgment is

GRANTED.

---

[1] This Court's Opinion and Order dated May 29, 2014 explicitly directed Plaintiff to omit the
New Rochelle Police Department from their Fifth Amended Complaint because as an agency of
the City, the Police Department is not a suable entity under § 1983. *Williams v. City of New
Rochelle*, No. 13–CV–3315 (NSR), 2014 WL 2445768, at *3 (S.D.N.Y. May 29, 2014). Plaintiff
failed to do so, and again named the Police Department as a Defendant in his Fifth and Sixth
Amended Complaint. Accordingly, all claims against the New Rochelle Police Department are
dismissed.

**Background**

The following facts are drawn from the parties' 56.1 submissions, the record, and are undisputed unless otherwise noted.

Plaintiff Llewellyn Angelo Williams is an African-American resident of the City of New Rochelle ("the City" or "New Rochelle"), New York, where he has operated a small company since 2002. (Compl. ¶¶ 8–9; Loomba Decl. in Supp. Mot. Summ. J. ("Loomba Decl."), Ex. E (Transcript of Deposition of Llewellyn Angelo Williams, January 9, 2015 ("Plaintiff's Dep. 1")), 16:18–22, ECF No. 103.) Plaintiff's company, Avalon Towing, (Def. 56.1 Mot. Summ. J. ("Def. 56.1"), ¶ 17) is one of several companies which tows and "boots"[2] illegally parked automobiles from privately owned parking lots within the parameters of local law. (*See* Compl. ¶ 9.) Another such company is Elite Towing and Flatbedding Corp., doing business as Safeway Towing ("Safeway"). (Def. 56.1 ¶ 15.)

The agreements under which companies such as Avalon Towing and Safeway operate define the scope of their assignments and the payments they receive for their services. Avalon Towing has such an agreement with several private lots. The local ordinance caps payment for booting of vehicles at $45 plus tax. Code of the City of New Rochelle § 316-3.1(A) ("Chapter 316" or "§ 316"). The statutory maximum charge for booting has fluctuated over time, and as a result Plaintiff alleges he urged the City Council to increase the fee that a booting operator may charge the owner of a vehicle improperly parked on private property on three to six unspecified occasions. (Def. 56.1 ¶ 42.)

---

[2] Booting is the act of "clamp[ing], affix[ing] or lock[ing] a booting device onto the wheel of a motor vehicle to prevent the wheel from rotating, thereby immobilizing the vehicle." Code of the City of New Rochelle § 316-2.

Unlike Avalon, Safeway tows in both private and municipal lots pursuant to an agreement with New Rochelle. Under Safeway's agreement with New Rochelle, Safeway boots vehicles on public property as directed by the New Rochelle Police Department ("NRPD"). (Def. 56.1 ¶ 16; Loomba Decl., Ex. D, Ex. A (City of New Rochelle Request for Proposal) (noting that "[t]he contractor shall provide booting services . . . as directed by the New Rochelle Police Department").) Safeway receives $35 to boot and remove a vehicle from public property without towing it and $75 to boot and tow a vehicle from public property. (Def. 56.1 ¶ 16.)

In addition to the private and public agreements entered into, all towing companies are subject to Chapter 316 of the Code of the City of New Rochelle.

### A. Code of the City of New Rochelle § 316–3.1

Chapter 316 governs and provides the procedural mechanisms for the placement of boot restraining devices on vehicles parked without permission on private property as well as the towing of such vehicles within New Rochelle. (Def. 56.1 ¶ 9.) The ordinance, which has gone through some relevant changes since 2012, states that "[a]n operator may boot an improperly parked vehicle on privately owned real property instead of towing it therefrom, but the fee for such booting shall not exceed $45 plus tax." § 316–3.1(A); (Def. 56.1 ¶ 10). Upon payment of the fee and removal of the booting device, the vehicle must be immediately removed from the property by the owner or operator. (*Id.*) Once the operator places the boot on an unattended vehicle, the person booting the vehicle must notify the New Rochelle Police Department ("NRPD") immediately. § 316–3.1(B).

Further, Chapter 316 provides procedures for putting residents on notice of the possibility of booting. The operator of a booting business can only operate on real property when "there is erected and maintained upon such property, at the entrances and exits to such property, a sign

containing a warning that parking thereon is restricted to authorized persons only, that unauthorized parking or trespassing is prohibited and that the vehicles of trespassers or unauthorized persons will be towed away or booted, and containing the further statement setting forth the address and telephone number where any person whose vehicle is removed may make inquiry to regain his vehicle." § 316-4(A). Included on that sign, must be the fee amount authorized by the City of New Rochelle for removing the boot. (*Id.*)

The New Rochelle City Council passed Local Ordinance No. 162-2012 on October 6, 2012, which amended Chapter 316. (Def. 56.1 ¶ 33.) The ordinance preserved the aforementioned procedures and added new requirements for towing and booting companies. It added provisions requiring booting companies operating on private property to obtain a license annually, that the operators file an application with the City containing a variety of information pertaining to the operator's fitness to obtain a license including proof of insurance in accordance with the City's requirements, and that the operator pay $750 for a license. (Def. 56.1 ¶¶ 34–36, 46); § 316-5–11. Further, the new ordinance prevented a licensed operator from booting on private property unless the licensee was authorized to boot motor vehicles pursuant to a written contract. (Def. 56.1 ¶ 37.); § 316-3.1(F).

Plaintiff's complaint stems from the Defendant's actions vis-à-vis Chapter 316. (*See e.g.*, Compl. ¶¶ 14–17.) Plaintiff alleges that the named Defendants selectively enforced Chapter 316 against him since 2011 (Compl. at ¶ 8; Defendant's Mem. in Supp. Mot. Summ. J. ("Mot. Supp. Summ. J.") 1, ECF No. 104) and specifically refers to four incidents.[3]

---

[3] Plaintiff's Complaint alleges that Defendants violated his civil rights on other occasions Plaintiff's complaint describes incidents that occurred on May 17, 2015 (Compl. ¶ 25) and January 10, 2015. (Compl. at ¶ 23.) Neither Defendant nor Plaintiff referenced these incidents in their 56.1 statements.

1. <u>The February 3, 2012 Incident</u>

On February 3, 2012, Plaintiff placed a boot on a vehicle in the parking lot of a CVS Pharmacy located at 625 North Avenue, New Rochelle, New York. (Def. 56.1 ¶ 19; Plaintiff Dep. 1, 81:15–17, 84:6–9.) Later that evening, a police officer contacted Plaintiff at the direction of Defendant Sergeant Conca, (Plaintiff's Dep. 1, 85:7–15), and asked Plaintiff to return to the CVS parking lot. (Def. 56.1 ¶ 22.) Plaintiff returned to the CVS parking lot, where he met Defendant Sergeant Conca and at least one other officer, whom Defendant Sergeant Conca identified in his deposition as Officer Schlesinger. (*See* Lomba Decl., Ex. G (Transcript of Deposition of Sergeant Daniel Conca, Feb. 11, 2015 ("Conca Dep.")), 30:10–12, 31:24–25; Def. 56.1 ¶ 24.)

Although the motives of the call are contested,[4] Plaintiff observed that the officers recalled him to the CVS parking lot because he did not have his booting/towing signs at the proper location, in violation of § 316. (*See* Def. 56.1 ¶ 25.) As a result, the officers requested that Plaintiff remove the boot. Plaintiff told the officers that he placed his warning signs over signs erected by Safeway. (Plaintiff's Dep. 1, 83:14–116) Plaintiff's sign, however, listed the booting fee at $65—a figure beyond the $45 limit under City Code § 316-3.1(A). (Def. 56.1 ¶ 21; Pl. Opp. Mot. Summ. J. 56.1 ("Pl. 56.1") ¶ 21 (noting that Plaintiff was still charging $45, despite the typographical error).) Following a discussion between the Officers and Plaintiff, the Officers expressed that they did not wish to arrest Plaintiff, but that they would if he did not remove the boot. (Def. 56.1 ¶ 25; Plaintiff's Dep. 1, at 82: 22–24.) The officers then threatened

---

[4] Plaintiff's deposition suggests that Sergeant Coca apparently called Plaintiff to remove the boot as a favor for a friend of his whose car was booted. (Def. 56.1 ¶ 23; Plaintiff's Dep. 1, 82:11–21.)

to issue Plaintiff a citation for violating the City Code. (Def. 56.1 ¶ 25.) During the exchange the officers told Plaintiff not to boot any more vehicles in the lot "because that sign is not where it's supposed to be." (Def. 56.1 ¶ 26; Plaintiff's Dep. 1, at 83:10–12.) and that an officer told him that he could not work anymore until he placed a sign closer to the entrance. (Def. 56.1 ¶ 26; Plaintiff's Dep. 1, 147:2–6.) Plaintiff observed that Sergeant Conca ordered other officers to tell CVS employees that if Plaintiff did not move his sign closer to the entrance, the officers were going to write CVS a city code violation. (Def. 56.1 ¶ 27; Plaintiff's Dep. 1, 146:10–13.)

Ultimately, the officers did not arrest Plaintiff, nor did they issue a citation for violations of the City Code to Plaintiff or CVS. (Def. 56.1 at ¶ 30.)

## 2. March 2, 2013 Incident

On March 2, 2013, Plaintiff placed a boot on a vehicle in a private parking lot on 466 Main Street, New Rochelle, New York (Def. 56.1 ¶ 50) that did not display a parking permit. (Def. 56.1 ¶ 51.) Plaintiff did not have a written agreement with the owner of the property to boot vehicles on that lot, as required by City Code § 316-3.1(F). (Def. 56.1 ¶ 50; Pl. 56.1 ¶ 50.)

At about 3:00pm, Defendant Sergeant Inzeo and other officers responded to the parking lot. (Def. 56.1 at ¶ 52.) When Defendant Sergeant Inzeo arrived, the vehicle displayed a valid parking permit. (*Id.*) The vehicle's owner told the officers that the permit had been on her vehicle all day, (*Id.*) although Plaintiff alleged that the owner moved the permit from another car. (*See* Plaintiff's Dep. 1, 239:11–21.) Sergeant Inzeo ordered Plaintiff to remove the boot from the vehicle. (Def. 56.1 at ¶ 52.) Plaintiff initially told Sergeant Inzeo that the owner of the vehicle had removed the permit from another vehicle and placed it on her own vehicle, but when Inzeo asked him whether he had actually seen the vehicle owner do this, he admitted that he had not. (*Id.*) Plaintiff testified that Sergeant Inzeo threatened to arrest him if he did not take the boot off

the vehicle. (Def. 56.1 ¶ 53; Plaintiff's Dep. 1, 98:13–16.)  During the exchange, Plaintiff

testified that Sergeant Inzeo called him a "dirtbag" and a "piece of shit" and that Sergeant Inzeo

told Plaintiff that he should "comb [his] knappy hair, you black people got knappy [sic] hair."

(Def. 56.1 ¶ 53; Plaintiff's Dep. 1, 119:14–15, 120:13–16, 121:25–122:8.)[5]

When Plaintiff asked if the vehicle owner would pay him for the boot, Sergeant Inzeo

replied that she would not. (Def. 56.1 ¶ 52.)  The officers did not issue any citations to Plaintiff.

(*Id.*)

### 3.  The July 17, 2013 Incident

On July 17, 2013, Plaintiff booted and removed the license plates from a vehicle

parked in a private lot across the street from 99 Union Avenue, New Rochelle, New York. (Def.

56.1 ¶ 55.)[6]  Plaintiff's sister, Felicia Rosenbaum, called Officers Siller and Castiglia to the

scene (Plaintiff's Dep. 1, 107:13), where she claimed ownership of the car. (Def. 56.1 ¶ 55.)

Plaintiff, who arrived at the scene after his brother called him (Def. 56.1 at ¶ 56), informed the

officers that he placed the boot on the car with the consent of the parking space's owner (*Id.*),

and claimed that the car was the subject of a dispute in Surrogate's Court.[7] (*Id.* at ¶ 55.) Plaintiff

also told the officers that the car was in a parking space paid for by a family member.  (*Id*; Def.

56.1 at ¶ 56.) Notably, Plaintiff did not have a written contract authorizing him to boot vehicles

in any part of the private lot as required by Chapter 316. (*Id.* at ¶ 55.) In fact, there were Safeway

---

[5] Sergeant Inzeo denies making any of the offensive statements attributed to him by Plaintiff.
(See Lomba Decl., Ex. J (Transcript of Deposition of Sergeant John Inzeo, Feb. 11, 2015 ("Inzeo
Dep.")), 31:25–32:6, ECF No. 103;Def. 56.1 ¶ 54.)
[6] Defendant's 56.1 statement asserts that this incident took place on July 12. (Def. 56.1 ¶ 55.)
However, both the amended complaint and the depositions note that the event took place on July
17. (*See e.g.* Plaintiff's Dep. 1, 103:14–19; Compl. ¶ 17.)
[7] In fact, no matter had been commenced in Surrogate's Court regarding the ownership of the car
or Plaintiff's mother's estate. (Def. 56.1 ¶ 55; Pl. 56.1 ¶ 55.)

signs indicating that they were authorized to tow in the lot. (*Id.*) Plaintiff testified that the officers told him to take the boot off the vehicle, or else they were going to arrest him. (*Id.* at ¶ 56.) Plaintiff removed the boot under the officers' orders. (*Id.*)

Plaintiff's sister, Rosenbaum, had the keys to the car and certain documentation pertaining to its ownership, which she showed to Defendant Officer Castiglia. (*Id.*) During the incident, Officer Siller learned that the car was registered in the name of Alice Williams, Plaintiff's deceased mother. (*Id.* at ¶ 55.) The officers allowed Rosenbaum to drive away in the car. (*Id.*)

Soon thereafter, Plaintiff filed a police complaint with the NRPD with respect to this incident. (*Id.* at ¶ 58.) Defendant Sergeant Wilson, who learned about the incident through the complaint review process, reviewed Officer Castiglia's police report. The report stated that Rosenbaum presented Officer Castiglia with notarized letters showing the car had been willed to her, that Safeway had the right to boot at the lot, and that Plaintiff had no authority to boot the vehicle under Chapter 316. (*Id.*) Defendant Sergeant Wilson then called Plaintiff and spoke to him about his complaint. During the conversation, Defendant Sergeant Wilson assured Plaintiff that he would look further into the incident but did not punish or reprimand Defendant Officer Siller nor Castiglia. (*Id.* at ¶ 59.)

4. The May 2, 2015 Incident

On May 2, 2015, Plaintiff booted various vehicles at a private parking lot at 491 Main Street, New Rochelle, New York and made a phone call to report the boots to the NRPD in accordance with Chapter 316. (*Compare* Def. 56.1 ¶ 61, *and* Pl. 56.1 ¶ 61.) Plaintiff testified that while he was on hold with the NRPD to report the boots, a female police officer arrived and said that he did not notify the NRPD about the boots. (Def. 56.1 ¶ 62.) Plaintiff replied that he did call

to report the boots, and that he was currently on hold with the NRPD. (*Id.*) The officer then stated that she would not issue him a citation for violating the City Code. However, Sergeant Conca arrived and ordered the woman officer to issue Plaintiff citations for violating the City Code. (*Id.*)

## Standard on Summary Judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. The rule states in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine dispute or issue of material fact by pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has fulfilled its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine

the truth of the matter." *Anderson*, 477 U.S. at 249. Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

**Discussion**

Plaintiff alleges that Defendants selectively enforced Chapter 316 against him, thereby violating various federal statutes. (Mem. Opp. Mot. Summ. J. ("Pl. Opp.") 5, ECF No. 100; *see also* Mem. Supp. Summ. J. at 1.) The Court takes the claims in turn.

## I. Selective Enforcement of Chapter 316 in Violation of 42 U.S.C. § 1983

Plaintiff alleges that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by selectively enforcing Chapter 316, a facially neutral law, against him. (Pl. Opp. 6.)

The Equal Protection Clause of the Fourteenth Amendment declares that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).

To prevail on a claim of selective enforcement in violation of the Equal Protection Clause, a plaintiff must prove that (1) "the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Tyk v. Surat*, 675 F. App'x 40, 42 (2d Cir. 2017) (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004)). Generally, a Plaintiff "must satisfy both elements to establish a claim of selective enforcement." *LaTrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999).

The first prong of the selective enforcement analysis consists of two requirements. First, Plaintiff must identify a similarly situated comparator. Second, Plaintiff must show that compared with others similarly situated, Plaintiff was treated differently.

Courts in the Second Circuit apply varying standards when determining whether comparators are "similarly situated" for selective enforcement claims. *New York Pet Welfare Ass'n, Inc. v. New York*, 143 F. Supp. 3d 50, 63 (E.D.N.Y. 2015) (comparing standards); *see also Missere v. Gross*, 826 F. Supp. 2d 542, 561 (S.D.N.Y. 2011) (noting that courts within the Second Circuit are split on whether the "high degree of similarity" standard, which applies to class-of-one claims, also applies to selective enforcement claims). The more stringent test stemming from class of one claims requires a showing that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Roman Catholic Diocese of Rockville Centre, N.Y. v. Inc. Vill. of Old Westbury*, 2012 WL 1392365, at *12 (E.D.N.Y. Apr. 23, 2012) (internal quotation marks and citations omitted). Other courts within our Circuit apply a less stringent standard, requiring Plaintiffs to show that "[P]laintiff and comparators were similarly situated in all material respects," *Missere*, 826 F. Supp. at 561 (citations and quotations omitted), or, rather, that "a prudent person, looking objectively at the incidents, would think them roughly equivalent." *Yajure v. DiMarzo*, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001).

As to the second requirement of the first prong, Plaintiff must show that he was treated differently from the alleged comparators. Such a demonstration often requires evidence of "the municipality's knowledge of the other, unenforced violations" committed by the comparators.

*Savino v. Town of Southeast*, 983 F. Supp. 2d 293, 306 (S.D.N.Y. 2013) (quoting *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 94 (W.D.N.Y. 2009)).

Here, Plaintiff identifies Safeway Towing as its comparator. (*See* Compl. ¶¶ 9–10; Pl. Opp. at 11.)  However, the Court need not reach a decision concerning this issue because Plaintiff fails to proffer sufficient evidence to fulfill the second part of the first prong of the analysis. As such, the Court assumes, *arguendo*, that Safeway and Avalon Towing are similarly situated comparators who boot and tow vehicles in private parking lots within New Rochelle.

Under the second requirement of the first prong, Plaintiff must show that compared with others similarly situated, Plaintiff was treated differently. The second prong then requires Plaintiff to show that the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations. *Tyk v. Surat*, 675 F. App'x 40, 42 (2d Cir. 2017).

Plaintiff, an African-American male, alleges that Defendants treated him differently because of his race. The Court now considers each of Plaintiff's claims and the specific allegations against each Defendant in turn.

A.  Selective Treatment by the Defendants

Defendants Sergeant Conca, Sergeant Inzeo, Sergeant Wilson, Officer Siller and Officer Castiglia argue that Summary Judgment should be granted in their favor because they did not selectively enforced Chapter 316 against Plaintiff.

Plaintiff alleges that Sergeant Conca violated his rights on two occasions. The first event occurred on February 3, 2012 when Sergeant Conca ordered Plaintiff to remove a boot from a vehicle in the CVS parking lot and move his signs closer to the entrance of the lot. The second incident occurred on May 2, 2015, when Sergeant Conca told a fellow officer to issue Plaintiff a citation for failing to call the NRPD to report he had booted a vehicle in a private parking space.

Sergeant Conca avers that on both occasions he "merely enforced the law in a neutral manner in response to unmistakable evidence that [P]laintiff had violated provisions of the City Code." (Mot. Supp. Summ. J. 7.)  Further, Defendant Sergeant Conca argues that there is no evidence that he treated Plaintiff differently from any other similarly situated violator of the Code. (Mot. Supp. Summ. J. 6.)

Plaintiff argues that since he had placed his signs over Safeway's signs, Sergeant Conca failed to penalize Safeway for its violation of the signage requirements, thus showing his selective treatment of Plaintiff. (Pl. Opp. 14.) Further, since Sergeant Conca mentioned that he was familiar with the lot, it would be "difficult to think" that he missed a signage violation on Safeway's behalf. (*Id*; Conca Dep. 30:22–23; *but see  id.* at 31:3–6 (noting that Defendant Sergeant Conca was not aware that Safeway had signs up in the same lot).) Defendant retorts that although Plaintiff simply placed his signs over Safeway's, there is no evidence that Safeway, like Plaintiff, failed to place another sign at the entrance to the lot, and as a result, there is no proof that Safeway actually violated the City Code in the same manner as Plaintiff. (Mem. Supp. Summ. J. at 8.) Defendant notes that there is no evidence that Defendant Sergeant Conca, or any other member of the police department, was actually aware of Safeway's violation. (*Id.*)

The Court finds that there is an issue of material fact as to whether or not Defendant Sergeant Conca treated Plaintiff differently than similarly situated comparator Safeway because Plaintiff offered evidence that Defendants had knowledge of Safeway's violations of the signage requirement of Chapter 316. *LaTrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 69–70 (2d Cir. 1999) (noting that Defendant must know of the comparator's violations to fulfill the first prong of the selective enforcement analysis); *Bernstein v. Village of Wesley Hills*, 95 F. Supp. 3d 547, 571–72 (S.D.N.Y. 2015).  The record reveals various questions of fact. For example, it is

13

unclear when exactly Safeway erected the signs in question, if Sergeant Conca or the NRPD had knowledge of the signs, or if the NRPD or Defendant Conca cited Safeway as a result. These unanswered questions lay beyond the Court's domain at the present juncture.

The claim against Defendant Conca, however, still fails as a matter of law because there is insufficient evidence to render an issue of material fact as to whether or not Plaintiff was treated differently on the basis of race. Simply stated, Plaintiff does not offer any evidence to this point.

Turning to the May 2, 2015 incident, Defendant argues that Plaintiff failed to submit any proof that Sergeant Conca selectively enforced the Chapter 316 requirement to notify the NRPD immediately after booting a vehicle. In response, Plaintiff only offers conclusory statements and argues that his allegation that Defendant Sergeant Conca cited him while Plaintiff was on the phone calling the boot in "clearly demonstrates his desire to satisfy a person[al] grudge or act upon some racial bias." (Pl. Opp. at 16.) The Court finds that these conclusory statements do not raise an issue of material fact as to whether Defendant Sergeant Conca selectively treated Plaintiff because there is no evidence in the record, nor did Plaintiff proffer such evidence, to support the proposition that Safeway was treated favorably and not issued a citation for failure to call the police. *Valley Nat. Bank v. Oxygen Unlimited, LLC*, 10-CV-5815(GBD), 2010 WL 5422508, at *2 (S.D.N.Y. Dec. 23, 2010) ("Where there is no evidence in the record 'from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact,' summary judgment is proper.") (quoting *Catlin v. Sobol*, 93 F.3d 1112, 1116 (2d Cir.1996)). Thus, the § 1983 claims against Defendant Sergeant Conca fail as a matter of law.

<u>Sergeant Inzeo</u>

On March 2, 2013, Plaintiff booted a purportedly permit-less vehicle in a private parking lot. Defendant Sergeant Inzeo arrived at the lot and told Plaintiff to remove the boot, noting that the car had a valid parking permit. (Def. 56.1 ¶¶ 50–54.) An exchange ensued during which Defendant Sergeant Inzeo purportedly made an offensive comment based on Plaintiff's race and threatened to arrest him if he did not remove the boot. (Plaintiff's Dep. 1, 98:15–16, 120:15–16.) Defendant argues that Plaintiff failed to produce proof that Sergeant Inzeo declined to enforce the relevant City Code provisions against a similarly situated person who had a different racial background and also violated the City Code by booting a car in its authorized parking space. (Mem. Supp. Summ. J. 10.) Further, Defendant argues that the record does not contain sufficient evidence that Defendant Sergeant Inzeo had a discriminatory motive in preventing Plaintiff from booting a vehicle that had a valid permit to park in the lot, and that he was merely enforcing Chapter 316. (*Id.*)

Plaintiff testified that Defendant Inzeo made racially charged and offensive comments and threatened to arrest Plaintiff if he did not remove the boot. (Pl. Opp. 16.) Further, Plaintiff argues as a general matter that Defendant Inzeo's testimony "displays inconsistent facts, which completely contradict the sworn testimony of [P]laintiff." (*Id.*)

Plaintiff concedes that "at the moment, there may not be solid evidence that Sergeant Inzeo has declined to enforce the relevant City Code provisions against a similarly situated person of a different racial background carrying on the same violation" and asks the Court to rely on "the inconsistency of sworn statements" because that alone "is sufficient proof that there is indeed a genuine dispute of facts to the matters asserted." (*Id.* at 16–17.) Plaintiff is mistaken, however, because the alleged inconsistent statements do not go to the question of whether or not

the Defendant selectively enforced Chapter 316, but rather, to the impermissible basis for such alleged selective treatment. Thus, the selective enforcement claim against Defendant Sergeant Inzeo fails as a matter of law because Plaintiff has not proffered any evidence indicating that Defendant Sergeant Inzeo selectively treated Plaintiff.

Officers Siller and Castiglia

Plaintiff contends that on July 17, 2013 Defendants Officers Siller and Castilgia selectively enforced provisions of Chapter 316 which require the removal of a boot upon arrival of the vehicle owner and prohibit booting on private property without the landlord's authorization.  Defendant asserts that Plaintiff has not identified any comparable violator who was spared the enforcement of these provisions, nor is there any evidence that Safeway escaped punishment for violations of Chapter 316.  (Mem. Supp. Summ. J. 11.)  Plaintiff argues that Defendants Officer Siller and Castiglia's decision to order the removal of the boot and allow Plaintiff's sister to drive away with the car, despite the vehicle being the subject of a family dispute, shows that the officers selectively enforced the City Code with malicious intention. (Pl. Opp. 17.)

Again, Plaintiff failed to provide evidentiary support for the element of selective treatment. As support for his assertion, Plaintiff makes cursory reference, without evidentiary support, to another towing company, ABC Towing, and notes that they operated without a license and were never issued any violations. Further, Plaintiff alleges that Safeway, again without evidence, has only been issued three citations in the past three years, and these two allegations prove "beyond a reasonable doubt that other comparable violators are indeed being spared the enforcement of these City Code provisions." (Pl. Opp. 17.) Plaintiff's allegations are meritless, however, without evidentiary support showing that that Defendants did not enforce the

16

applicable sections of Chapter 316 against a similarly situated comparator.  Where, as here, "there is no evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact," summary judgment is proper. *Valley Nat. Bank v. Oxygen Unlimited, LLC*, 10-CV-5815(GBD), 2010 WL 5422508, at *2 (S.D.N.Y. Dec. 23, 2010) (citations and quotations omitted). Without more, Plaintiff's claims against Officers Siller and Castiglia fail as a matter of law.  *Savino*, 983 F.Supp.2d at 306 ("In addition to demonstrating similarly situated comparators, Plaintiffs must demonstrate that they were treated differently from the comparators, as differential treatment is 'the *sine qua non* of a *LeClair* selective enforcement violation.'") (quoting *Doe v. Village of Mamaroneck*, 462 F. Supp. 2d 520, 555 (S.D.N.Y.2006)).

### Sergeant Wilson

To the extent that Plaintiff contends that Sergeant Wilson selectively treated Plaintiff in his review of the July 17, 2013 incident report or that he selectively enforced Chapter 316 against him, in violation of § 1983, Plaintiff's claims fails as a matter of law. [8] Plaintiff simply does not provide any evidence purporting that Sergeant Wilson treated another similarly situated comparator differently. Without more, this Court cannot find an issue of material fact.

### II.    "Class of One" Claim

Plaintiff next brings a selective enforcement claim under a class of one theory.

---

[8] Plaintiff makes various claims against Sergeant Wilson without citing to proper legal authorities or theories.  Specifically, Plaintiff, for the first time, explicitly claims that Sergeant Wilson aided and abetted Officers Siller and Castiglia's selective enforcement of Chapter 316 and failed to analyze Plaintiff's complaint before dismissing the complaints against the officer. (Pl. Opp. 19.) Defendant construed these allegations as a Selective Enforcement claim arising under § 1983 in their motion for summary judgment without objection from Plaintiff.

A plaintiff may seek to prove discrimination under the "class of one" analysis, by asserting that he or she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" without otherwise claiming membership in a particular class or group. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *accord Doe v. Village of Mamaroneck*, 462 F. Supp. 2d 520, 543 (S.D.N.Y. 2006); *see also Martine's Service Center, Inc. v. Town of Wallkill*, 554 F. App'x 32, 35 (2d Cir. 2014).

The class of one "similarly situated" standard is a stringent one because "plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. For Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (citing *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir.2006)); *see supra* at 11.

The standard in class-of-one claims requires a high degree of similarity between comparators. As previously discussed, Plaintiff alleges that Avalon Towing is similarly situated to Safeway because they engage in the same type of business, namely, towing and booting cars on privately owned property in the same city.

Assuming, *arguendo*, that Plaintiff met the exacting "similarly situated" standard of class-of-one claims, Plaintiff fails to provide any evidence showing that he was treated differently than a similarly situated comparator. As a result, Plaintiff's class-of-one claims against Defendants Inzeo, Siller, Castiglia and Wiilson fail as a matter of law.

Defendant Sergeant Conca, stands on slightly different ground. As previously discussed, there is an issue of material fact as to whether or not Sergeant Conca selectively treated Plaintiff. Thus, assuming, *arguendo*, that he also treated Plaintiff differently under the class of one analysis, Plaintiff must nonetheless at least supply a "reason why Defendants might single him out for intentional discrimination." *Ercolani v. Mousso*, 16-CV-6546 (CJS), 2017 WL 1063472,

at *6 (W.D.N.Y. March 21, 2017). There is no issue of material fact with respect to discrimination against Plaintiff because Plaintiff does not supply or point to any evidence in the record suggesting "intentional disparate treatment as required for a class of one equal protection claim." *Juliano v. DeAngelis*, 2007 WL 2454216, at *2 (Aug. 23, 2007 S.D.N.Y.) (emphasis added). Plaintiff merely states conclusory assertions against Defendant Sergeant Conca that do not rebut Defendant Sergeant Conca's enforcement of the signage requirement. At minimum, Plaintiff must provide evidence indicating a reason for the intentional treatment. However, he has not given substantiated reasons with evidentiary support pointing to the intentionality or purpose behind Conca's alleged differential treatment. As a result, the class of one claims against Defendant Conca also fail as a matter of law.

### III.    42 U.S.C. § 1981

Plaintiff next brings a selective enforcement claim and a claim of racial discrimination under § 1981.

A claim pursuant to § 1981 "is not based on an underlying violation of a constitutional right, but rather provides an alternative statutory remedy for violations that concern an activity enumerated in the statute." *Anderson v. City of New York*, 817 F. Supp. 2d 77, 95 (E.D.N.Y. 2011) (*citing Olivera v. Town of Woodbury*, 281 F. Supp. 2d 674, 684 (S.D.N.Y.2003)). Section 1981 states that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

To establish a violation of § 1981 Plaintiff must show: "(1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000) (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam)). Essential to a § 1981 claim is "that the actions complained of were racially motivated and purposefully discriminatory." *Jowers v. DME Interactive Holdings, Inc.*, 00-CV-4735 (LTS)(KNF), 2003 WL 230739, at *4 (S.D.N.Y. Feb. 3, 2003). To prove that the Defendant intended to discriminate on the basis of race, "a plaintiff can (1) point to a law or policy that expressly classifies persons on the basis of race, (2) identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner, or (3) allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Spence v. Daily News*, 00-CV5394 (DLC), 2001WL121938, at *2 (S.D.N.Y. Feb. 13, 2001). Further, a selective enforcement claim arising under § 1981 requires proof evincing instances in which similarly situated non-minorities were treated differently. *Albert v. Carovano,* 851 F.2d 561, 573 (2d Cir.1988); *see also Brown*, 221 F.3d at 339.

Here, Plaintiff, an African-American male, clearly meets the first prong. However, Plaintiff fails to establish the essential second element as to Defendants Sergeant Conca, Sergeant Wilson, Officer Siller and Officer Castiglia. To satisfy the second prong, "discriminatory intent on the basis of race must be a substantial or motivating factor behind the behavior complained." *Wong v. Mangone*, 450 F. App'x 27, 30 (2d Cir. 2011). A showing of intentional discrimination within the contours of § 1981 requires evidence or proof purporting that Defendants acted intentionally on the basis of race. *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 383, 391(1982). In the instant case, Plaintiff submits no evidence to

substantiate his claim of intentional discrimination on the basis of race concerning the individual Defendants Conca, Siller, Castiglia, and Wilson. Plaintiff merely offers conclusory remarks that Defendants acted on the basis of race. As previously noted, Plaintiff also failed to provide evidence that these Defendants selectively treated Plaintiff under impermissible considerations. Plaintiff provides no evidence substantiating a claim of intentional discrimination or selective treatment, and thus, Plaintiff's § 1981 claims against Defendants Conca, Siller, Castiglia, and Wilson fails as a matter of law.

Insofar as Plaintiff asserts a selective enforcement claim against Defendant Sergeant Inzeo arising under § 1981, it too fails as a matter of law. As previously discussed, Plaintiff failed to show instances where a Defendant Sergeant Inzeo treated a similarly situated person differently. *See Alber*, 851 F.2d at 573. Thus, the claim fails as a matter of law.

To the extent that Defendant asserts a racial discrimination claim against Defendant Sergeant Inzeo for applying Chapter 316, a race neutral law, in an intentionally discriminatory manner, Plaintiff has not shown an issue of material fact. Defendant argues that Sergeant Inzeo merely enforced a race-neutral law in an even-handed manner when he ordered Plaintiff to remove a boot from a vehicle displaying a valid parking permit. (Reply Mem. Further Supp. Mot. Summ. J. 7, ECF No. 105.) Plaintiff, on the other hand, alleges that Defendant Sergeant Inzeo discriminated against him on the basis of race and testified to the alleged statements Defendant Sergeant Inzeo made during their encounter in which he purportedly referred to the Plaintiff as a "dirt bag" a "piece of shit" and told Plaintiff to comb his "knappy" hair. Sergeant Inzeo denied making such statements. (Inzeo Dep. 31:25–32:3.) The use of racial epithets can create an issue of material fact with regards to discriminatory intent. *See e.g. Wong v. Yoo*, 649 F.Supp.2d 34, 69–70 (E.D.N.Y. 2009) ("[W]hether defendant [] used racial epithets is an issue of

fact that is material to determining whether defendant [] possessed the requisite discriminatory intent. Accordingly, defendant [] is not entitled to summary judgment on this ground."); *Barba v. Data Centrum Communications, Inc.*, 04-CV-4569, 2008 WL 563460, at *2–*3 (S.D.N.Y. Feb. 26, 2008) (finding that Plaintiff's detailed allegations concerning Defendant's numerous racially derogatory comments, coupled with Defendant's differential treatment, was sufficient to survive a motion to dismiss on the second prong). However, in this case, Plaintiff has not proffered evidence, nor pointed to any evidence in the record, showing that Sergeant Inzeo enforced Chapter 316, a race neutral law, in an intentionally discriminatory manner on the basis of race or that race was a substantial or motivating factor in Defendant's decision to enforce the ordinance. *Spencer*, 2001WL121938, at *2; *Wong*, 450 F. App'x at 30. The isolated racial epithet, without more, does not raise an inference of racial motivation. Thus, Plaintiff's claim fails as a matter of law.

## IV.    Municipal Liability Claim

Plaintiff next claims that the City of New Rochelle is liable for violating his constitutional rights under §§ 1981 and 1983. Local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *see also Jett v. Dallas Ind. School Dist.*, 491 U.S. 701, 735–36 (1989) (holding that a Plaintiff asserting a §1981 claim against a municipality or governing body must show that the violation of his rights "was caused by a custom or policy within the meaning of *Monell*"); *Chin v. NYCHA*, 575 F. Supp. 2d 554, 561 (S.D.N.Y. 2008) ("A municipality can be liable for violating Section 1981 only if the injury at issue resulted from the execution of a

racially discriminatory policy or custom") (quotations and citations omitted). Although a municipality may be held liable under § 1983 when action pursuant to official municipal policy of some nature caused a constitutional tort, "a municipality cannot be held liable *solely* because it employs a torfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in the original). Although the "touchstone" of a § 1983 action is an allegation that an official policy is responsible for deprivations of rights pursuant to governmental "custom", and the like, the custom need not receive formal approval through the body's official decision making channels. *Id.*

When, as here, "the defendant sued for discrimination under § 1981 [and] § 1983 is a municipality—or an individual sued in his official capacity,—the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (quotations and citations omitted); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (noting that the determination of municipal liability requires a separate inquiry into whether a "policy" or "custom" exists). A municipal policy exists in at least two formulations: "(1) where there is an officially promulgated policy as that term is generally understood (i.e., a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken." *Triano*, 895 F.Supp.2d at 531 (*citing Newton v. City of New York*, 566 F.Supp.2d 256, 271 (S.D.N.Y.2008)). Municipal customs may be conceived from less formal approvals by the appropriate decision makers. *Id*; *see also Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) ("[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate

decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law").

Whether through a municipal policy or custom, Plaintiff must provide evidence showing that the practice is "so permanent and well settled as to constitute a custom or usage with the force of law*." St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (citations and quotations omitted). Further, Plaintiff must demonstrate that the municipality was the moving force behind the harm alleged through its deliberate conduct, "[t]hat is, a [P]laintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404.

As a result, "[a] single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation." *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002); *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) ("Thus, isolated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability"). Even in situations where Plaintiff alleges various incidents, "[t]he mere assertion [] that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).

In this case, Defendant argues that Plaintiff "has barely alleged, and not raised any evidence in discovery, that the City maintained a policy, practice, or custom of selectively

enforcing its booting Code." (Mem. Supp. Mot. Summ. J. 17.) They further argue that the class of one claim against the City fails because Plaintiff did not offer evidence purporting that the City Council passed the amendments to Chapter 316 to intentionally hurt him. (*Id.* at 16.) Plaintiff asserts that New Rochelle instituted a custom, policy, or practice of selectively enforcing and discriminatorily applying Chapter 316 against him. (Pl. Opp. 21.) Plaintiff relies on the aforementioned encounters with officers of the NRPD (*Id.*) [9] and argues that the 2012 and 2013 amendments to Chapter 316 were uniquely burdensome, and were specifically aimed at harming him under a class of one analysis. (*Id.* at 22–23.) Plaintiff further posits that the amendments to Chapter 316 created burdens and obstacles for small towing companies. (*See* Compl. ¶¶ 14, 16.) Plaintiff testified that two local towing and booting companies ceased operations in New Rochelle due to the provisions of the 2012 amendments to Chapter 316. (Def. 56.1 ¶ 63.) Plaintiff also noted that in addition to Safeway, another company named C&C performed booting and/or towing work in New Rochelle after the enactment of those amendments. (Def. 56.1 at ¶ 63.)

The *Monell* claims against New Rochelle fail as a matter of law. First, the record is devoid of any evidence purporting to show that an officially promulgated policy to selectively enforce Chapter 316 against Plaintiff, or to intentionally discriminate against him on the basis of race, exists. *See Triano*, 895 F.Supp.2d at 531. Second, Plaintiff did not produce evidence creating an issue of material fact as to a municipal custom through which he was discriminatorily treated, or through which Chapter 316 was selectively enforced against him. *Id.*

---

[9] Plaintiff, as Defendant notes in their pleadings (Mot. Supp. Sum. Judg. 16), stated that his "argument is that the City should be vicariously liable for the alleged actions of its employees." (Pl. Opp. at 22.) Plaintiff, however, cites to, and makes the analysis, under the *Monell* framework. As a result, the Court construes Plaintiff's disorienting pleading as a *Monell* claim against the City of New Rochelle.

Plaintiff provides conclusory statements proffering such a custom. For example, his complaint alleges that that the passage of the 2012 and 2013 amendments to Chapter 316 specifically targeted him to put him out of business. (Compl. ¶ 14.) The complaint also avers that Chapter 316, and its enforcement, was specifically designed as a retaliatory action against him. (*See* Compl. ¶ 16.) Plaintiff testified that he "just knew" that the City Code was changed to target him. (Plaintiff's Dep. 1,152:8–11.) Although Plaintiff provides examples of how the new City Code has affected his profession as an individualized and general matter, he provides no evidence to support the claims that the City Council passed the Chapter 316 amendments specifically to harm him.

At best, it could be argued that his police encounters created such a wide spread custom as to have the force of law. *See Bd. Of Cnty. Comm'rs*, 520 U.S. at 404. However, as previously discussed, there is no issue of material fact as to whether or not named NRPD officers selectively enforced Chapter 316 against Plaintiff. As a result, on this record, there is no issue of material fact as to whether a wide spread practice or official policy of intentional discrimination or selective enforcement exists. Plaintiff's *Monell* claims fail as a matter of law.

### Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Court respectfully directs the Clerk of the Court to terminate the motion at ECF Doc. No. 101 and enter judgment on behalf of Defendants. To the extent Plaintiff concedes that Defendants' Motion for Summary Judgment encompassed all his pending claims, all claims against the Defendants are disposed of.

Dated: December 7, 2017
      White Plains, New York

SO ORDERED:

NELSON S. ROMÁN, U.S.D.J.

26